1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11   NANCY BINNELL, on behalf of herself       Case No. 8:20-00447 DOC (ADSx)
     and all others similarly situated,
12
                         Plaintiff,
13                                              REPORT AND RECOMMENDATION OF
               v.                               UNITED STATES MAGISTRATE JUDGE
14
     ST. JOSEPH HOSPITAL ORANGE, ST.
15   JOSEPH HEALTH, PARATUS
     PARTNERS LLP, and DOES 1-10,
16   inclusive,

17                       Defendants.

18

19        This Report and Recommendation is submitted to the Honorable David O.

20   Carter, United States District Judge pursuant to 28 U.S.C. § 636 and General Order 05-

21   07 of the United States District Court for the Central District of California.

22   I.    **INTRODUCTION**

23        Plaintiff Nancy Binnell, on behalf of herself and all others similarly situated,

24   brought this action asserting violations of the Federal Debt Collection Practice Act

("FDCPA"), California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal"), Unfair Competition Law ("UCL"), and Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse") against defendants St. Joseph's Hospital – Orange, St. Joseph Health (together, the "St. Joseph's Defendants"), and Paratus Partners LLC (collectively, "Defendants") in relation to a $190,000 medical expense lien filed against Plaintiff's tort litigation recovery from the third party that was responsible for her injuries.

Before the Court is the St. Joseph's Defendants Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). [Dkt. No. 24]. This Motion has been referred to the undersigned Magistrate Judge for determination by Report and Recommendation. [Dkt. No. 37]. For the reasons discussed below, it is recommended that the Motion to Dismiss be granted and the FAC be dismissed without prejudice.

## II.   FACTUAL BACKGROUND

This action was first filed on March 4, 2020, and the operative complaint, the FAC, was filed on June 1, 2020. [Dkt. Nos. 1, 19][1]. In the FAC, Plaintiff alleges that she was treated at Mission Medical Center for injuries incurred when she was struck by a car on May 17, 2018. [Dkt. No. 19, ¶ 23]. Plaintiff spent approximately three weeks in the hospital. [Id. at ¶ 23]. Plaintiff is over the age of 65, covered under Medicare, and holds a Medicare supplement policy with Blue Cross. [Id. at ¶¶ 24, 34]. Approximately three months after Plaintiff was released from the hospital, the responsible driver's third-party insurance policy was tendered with a maximum payment of $100,000 per

---

[1] All page references shall refer to CM/ECF pagination.

incident.  [Id. at ¶ 29].  Defendants knew at this time that the liability policy tendered was capped at $100,000.  [Id.].

Soon after, on August 17, 2018, Plaintiff received a "Notice of Statutory Lien Claim" in which defendant Paratus explained it was the "authorized agent" of St. Joseph Health, and "gave supposed notice that St. Joseph Health was claiming to impose liens on any damages that the patient might recover from the party that injured Plaintiff." [Id. at ¶ 31].  The sum total of the asserted liens was $190,000.  Plaintiff asserts Defendants submitted "very few" of the services she received for Medicare reimbursement and that the amount asserted in liens is "far above the negotiated reimbursement rates the hospital had negotiated with Medicare—and also far above the $100,000 third-party liability policy that had been tendered as a result of Plaintiff's accident." [Dkt. No. 19, ¶¶ 30-31].  Plaintiff alleges the Secondary Payer provisions of Medicare, apply only if "payment has been made or can reasonably be expected to be made under an automobile or liability insurance or plan." [Id. at ¶ 33].  If payment cannot reasonably be expected to be paid, then Medicare's Secondary Payer provisions do not apply, and Medicare is the primary payer.  [Id.].

Plaintiff alleges Defendants asserted the liens in bad faith with inflated amounts against Plaintiff's tort recovery causing delay in recovery to create leverage to obtain an *in terrorem* settlement of the liens at amounts greater than the Medicare reimbursement rate.  [Id. at ¶¶ 36-39].  Plaintiff alleges these practices of Defendants' have become widespread.  Plaintiff alleges the rampant misuse of power against consumers who have done nothing but end up in the wrong place at the wrong time must be prevented.  [Id. at ¶ 41].

1    Plaintiff brings this action on her own behalf, and on behalf of a class of similarly

2    situated consumers, pursuant to Federal Rule of Civil Procedure 23.  The FAC defines

3    the class as, "[a]ll persons in the state of California who are Medicare recipients against

4    whom Defendants have asserted liens above and beyond those amounts they have

5    sought in reimbursement from Medicare." [Dkt. No. 19, ¶ 42].  Plaintiff identifies a sub-

6    class of similarly situated consumers, and pertinent to her Fourth Cause of Action, as

7    "[a]ll persons in the state of California who are over the age of 65 and Medicare

8    recipients against whom Defendants have asserted liens above and beyond those

9    amounts they have sought in reimbursement from Medicare."  [Id. at ¶ 43].

10   ## III.   **MOTION TO DISMISS**

11   This Motion to Dismiss was filed by the St. Joseph's Defendants on July 1, 2020.

12   [Dkt. No. 24].  Defendants argue Plaintiff's claims are precluded by the Medicare

13   Secondary Payer Act and because Plaintiff did not allege that she exhausted

14   administrative remedies.  Defendants also argue Plaintiff's claims are precluded by safe

15   harbor provisions, by litigation privilege, and are individually defective as time barred.

16   Even if not precluded, Defendants argue Plaintiff's claims fail to meet heightened

17   pleading standards pursuant to Federal Rule of Civil Procedure 9(b), or fail to state a

18   claim upon which relief can be granted.  [Id. at p. 2].  Defendants also filed a Request for

19   Judicial Notice to which Plaintiff has not objected.  [Dkt. No. 27].[2]

20

21   [2] The St. Joseph's Defendants request judicial notice of three documents, all of which
     are publications from the Centers for the Medicare & Medicaid Services and are publicly
22   available at cms.gov.  [Dkt. No. 27-1, p. 3].  As government documents and publications
     found on government agency websites, this Court may take judicial notice of
23   Defendants' Exhibits A – C.  See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 999
     (9th Cir. 2010) (taking judicial notice of information on the websites of two school
24   districts because they were government entities).  Accordingly, St. Joseph's Defendants'
     Request for Judicial Notice is granted.

Plaintiff filed an Opposition on July 22, 2020.  Plaintiff argues that the claims alleged implicate the California Hospital Lien Act ("CHLA") which allows liens for "reasonable and necessary" medical expenses only, and that the Motion to Dismiss and statute of limitations arguments are premature.  See generally [Dkt. No. 28].  Plaintiff asserts that the claims in the FAC are sufficiently pled and that exhaustion of administrative remedies is not required because the claims do not arise under and are not inextricably intertwined with the Medicare Act.  Defendants filed a Reply in support of their Motion to Dismiss on August 10, 2020.  [Dkt. No. 31].

## IV.    ANALYSIS

### A.    Subject Matter Jurisdiction for Claims Arising under the Medicare Act

St. Joseph's Defendants argue Plaintiff's claims essentially seek Medicare benefits, and as such, there can be no judicial review unless she has exhausted her administrative remedies.  [Dkt. No. 24, p. 21].  This is essentially an argument that the Court lacks subject matter jurisdiction to consider Plaintiff's claims, which is most properly construed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Because this argument challenges whether the Court has jurisdiction to consider any of Plaintiff's claims, this argument must be addressed first.

#### 1.  Legal Standard

Rule 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  All allegations in the complaint are presumed true for purposes of a facial attack, Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004), but the court need not accept as true legal conclusions couched as factual allegations, Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009).  "The issue of

5

1   exhaustion bears on the district court's jurisdiction." <u>Do Sung Uhm v. Humana, Inc.</u>,

2   620 F.3d 1134, 1140 (9th Cir. 2010).  Claims "arising under" the Medicare Act are

3   subject to judicial review only if administrative remedies have first been exhausted.  42

4   U.S.C. §§ 405(g)-(h); <u>Heckler v. Ringer</u>, 466 U.S. 602, 614-15 (1984).

### 2.   Application

#### a.  Arising Under the Medicare Act

7          St. Joseph's Defendants argue the FAC must be dismissed because Plaintiff failed

8   to exhaust her administrative remedies as required by the Medicare Act.  They argue

9   each of Plaintiff's claims arise under the Medicare Act because the gravamen of the FAC

10  is denial of Medicare benefits.  [Dkt. No. 24, p. 21].  St. Joseph's Defendants point to the

11  fact that Plaintiff's alleged injury is based on the allegation that St. Joseph's Defendants

12  should have submitted claims for payment of their services to Medicare, rather than

13  asserting an unreasonable lien against Plaintiff's potential recovery in a tort action from

14  a limited third party insurance policy.  [<u>Id.</u>].  They further assert there is no allegation

15  that Plaintiff suffered any injury beyond the "purportedly improper efforts by

16  Defendants to collect against her tort damages." [<u>Id.</u>].  St. Joseph's Defendants assert

17  Plaintiff must have exhausted her administrative remedies and yet, there is no such

18  allegation pled in the FAC.  [<u>Id.</u>].  In her Opposition, Plaintiff acknowledges lack of

19  exhaustion but argues it is not necessary because her claims do not arise under the

20  Medicare Act.  [Dkt. No. 28].

21          Claims "arising under" the Medicare Act are subject to judicial review only if

22  administrative remedies have first been exhausted.  <u>See</u> 42 U.S.C. §§ 405(g)-(h);

23  <u>Heckler</u>, 466 U.S. at 614-15.  The Supreme Court has identified two circumstances in

24  which a claim 'arises under' the Medicare Act: "(1) where the 'standing and the

substantive basis for the presentation of the claims' is the Medicare Act; and (2) where the claims are 'inextricably intertwined' with a claim for Medicare benefits." Uhm, 620 F.3d at 1141 (citing Heckler, 466 U.S. at 614-15) (internal quotations omitted). St. Joseph's Defendants assert Plaintiff's claims are inextricably intertwined with a claim for Medicare benefits.

Claims are considered "inextricably intertwined" with the Medicare Act when they are "cleverly concealed claims for benefits." Kaiser v. Blue Cross, 347 F.3d 1107, 1112 (9th Cir. 2003) (quoting United States v. Blue Cross & Blue Shield of Ala., Inc., 156 F.3d 1098, 1109 (11th Cir. 1998)). Heckler v. Ringer, 466 U.S. 602 (1984) is the seminal case for such claims. The plaintiffs in Heckler were Medicare claimants who filed claims for reimbursement following respiratory surgery. 466 U.S. at 609. The plaintiffs brought suit to challenge a policy by the Secretary of Health and Human Services that instructed fiscal intermediaries not to reimburse payment for claims arising out of bilateral carotid body resection surgery when performed to relieve respiratory distress and sought injunctive and declaratory relief. Id. at 607, 611. The Supreme Court found that the plaintiffs' claims challenging the denial of coverage arose under the Medicare Act given that plaintiff's claims were "at bottom, a claim that they should be paid for their [] surgery." Id. at 614. The Court further found that if plaintiffs obtained a favorable ruling "only essentially ministerial details [would] remain before [the plaintiffs] would receive reimbursement." Id. at 615. As such, administrative exhaustion pursuant to the Medicare Act was required and by filing the complaint in the District Court, plaintiffs failed to satisfy the exhaustion requirement. Id. at 617.

Another case illustrating when claims are "inextricably intertwined" is Uhm, where the plaintiffs brought claims for breach of contract, fraud, unjust enrichment, and

1   violation of state consumer protection laws after their provider declined to pay for

2   prescription drug benefits, forcing plaintiffs to pay out of pocket for two months of

3   prescription drugs.  620 F.3d at 1139.  The Court found the breach of contract claim was

4   "a backdoor attempt to enforce the Act's requirements and to secure a remedy for

5   Humana's alleged failure to provide benefits," and that plaintiffs had not "allege[d] any

6   injury that could not be remedied through the retroactive payment of Medicare drug

7   benefits."  Id. at 1143-44.

8       In contrast, in Ardary v. Aetna Health Plans, 98 F.3d 496 (9th Cir. 1996), the

9   claims were found not to be "inextricably intertwined" with the denial of Medicare

10  benefits where brought by the family of a woman who died after being taken to a local

11  hospital because her Medicare plan administrator refused to authorize airlift

12  transportation to a better-equipped hospital.  The Court determined the claims for

13  wrongful death and other tort theories were "at bottom not seeking to recover benefits,"

14  and their injury "[could not] be remedied by the retroactive authorization or payment of

15  the airlift transfer."  Id. at 498, 500.

16      Similarly, in McCall v. PacifiCare of Cal., Inc., 25 Cal.4th 412, 415 (2001), the

17  claims were found not to be "inextricably intertwined".  There, a lung care patient and

18  his wife brought claims against his doctor for negligence, willful misconduct, fraud, and

19  infliction of emotional distress after the plaintiff's doctor, HMO, and physician provider

20  group refused to refer him to a specialist for a lung transplant.  Ultimately forcing the

21  patient to disenroll from the HMO to get on the Medicare list for a transplant.  25

22  Cal.4th at 415.  The Court found the claims were not inextricably intertwined because

23  plaintiffs "may be able to prove the elements of some or all of their causes of action

24  without regard, or only incidentally, to Medicare coverage determinations," because

"none of their causes of action seeks, at bottom, payment or reimbursement of a Medicare claim or falls within the Medicare administrative review process, and because the harm they allegedly suffered thus is not remediable within that process." Id. at 426. The California Supreme Court likened the plaintiffs' claims to two situations where claims were found to be "collateral to, not inextricably intertwined with, Medicare claims." Id. at 425. The situations analogized to by the Court were: (1) where a provider may "negligently fail to use ordinary skill and care in treating a beneficiary, or properly to advise the beneficiary concerning his health condition or appropriate treatment options, whether or not such options are covered by Medicare, thus preventing the beneficiary from seeking such treatment even at his own expense," and (2) where a provider may "fail to provide appropriate referrals to specialists, and thus prevent the beneficiary from obtaining appropriate care, again without regard to coverage." Id.

One final example of claims that are not "inextricably intertwined" with claims for Medicare benefits is Inchauspe v. SCAN Health Plan, 2018 U.S. Dist. LEXIS 23056, 2018 WL 566790 (C.D. Cal. Jan. 23, 2018). There, the plaintiff brought claims for tortious breach of the implied covenant of good faith and fair dealing, breach of contract, financial elder abuse, negligence, professional negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress after plaintiff suffered a stroke and was denied acute rehabilitation services, despite his doctor's orders. 2018 U.S. Dist. LEXIS 23056 at *1. The District Court explained that plaintiff's claims seek "consequential damages for his physical and mental suffering caused by SCAN's failure to provide adequate medical care." Id. at *7. The Court compared the plaintiff's claims to Ardary where "plaintiff's claims may be predicated on SCAN's failure to authorize acute rehabilitative services, but plaintiff is not seeking to recover Medicare

1   benefits, and his injuries cannot be remedied by a retroactive payment of benefits." <u>Id.</u>

2   at \*7. Accordingly, the Court found the plaintiff's claims were not inextricably

3   intertwined with a claim for Medicare benefits.

4        Using these exemplars, the Court must determine whether Plaintiff's claims are

5   inextricably intertwined with a claim for Medicare benefits such that they arise under

6   the Medicare Act. Specifically, Plaintiff asserts claims for violations of the Federal Debt

7   Collection Practice Act ("FDCPA"), California's Rosenthal Fair Debt Collection Practices

8   Act ("Rosenthal"), Unfair Competition Law ("UCL"), and Elder Abuse and Dependent

9   Adult Civil Protection Act ("Elder Abuse"). <u>See</u> <u>generally</u> [Dkt. No. 19]. St. Joseph's

10   Defendants argue each of Plaintiff's claims is "inextricably intertwined" with a claim for

11   Medicare benefits because the "gravamen of Plaintiff's FAC is that Defendants

12   improperly prevented her from receiving Medicare benefits to which she claims

13   entitlement." [Dkt. No. 24, p. 23]. St. Joseph's Defendants also point to a failure to

14   allege "any injury apart from the wrongful denial of benefits" and assert "there is

15   nothing in her FAC that cannot be remedied through the Medicare administrative

16   scheme." [<u>Id.</u>].

17        On the other hand, Plaintiff argues that the four causes of action in this case are

18   not "inextricably intertwined" with a claim for Medicare benefits. Plaintiff argues that

19   "the issue presented in the FAC is whether the Defendants' CHLA liens were valid and, if

20   not, whether the invalid CHLA liens support the causes of action Plaintiff alleged [in the

21   FAC]." [Dkt. No. 28, p. 14]. To support the argument that none of Plaintiff's claims

22   require her to use or exhaust federal Medicare administrative remedies, Plaintiff seeks

23   to distinguish the four claims in the FAC from those presented in <u>Uhm</u>, 620 F.3d 1134

24   (9th Cir. 2010). [Dkt. No. 28, pp. 14-16]. <u>Uhm</u> involved claims for breach of contract,

1    fraud, unjust enrichment, and violation of state consumer protection laws after

2    Medicare claimants' provider declined to pay for prescription drug benefits, forcing

3    plaintiffs to pay out of pocket for two months of prescription drugs.  Id. at 1139.  Plaintiff

4    recognizes that the breach of contract and unjust enrichment claims in Uhm were

5    "'merely creatively disguised claims for benefits' that should have directly been obtained

6    under the Medicare Act," and as such had to be resolved through Medicare's

7    administrative procedures.  [Id. at p. 15] (quoting Uhm, 620 F.3d at 1143-44).

8         However, Plaintiff argues, her four claims are more akin to the consumer

9    protection act and fraud claims in Uhm, which were not found to arise under the

10   Medicare Act and accordingly were not subject to its exhaustion requirements.  [Dkt.

11   No. 28, p. 15-16].  Plaintiff asserts her four claims all involve injuries "collateral" to any

12   claim for Medicare benefits, allowing for recovery even if a violation of the Medicare Act

13   is never proven, so do not arise under the Medicare Act.  [Id. at p. 16].  As to the first

14   claim, Plaintiff asserts she can still recover under the FDCPA if the issued liens were

15   invalid because Plaintiff alleges the liens were in excess of the CHLA's "necessary and

16   reasonable" limits.  [Id. at p. 17].  Plaintiff asserts the same is true for the second claim,

17   violation of the Rosenthal Act.  [Id.].  Plaintiff asserts the third claim, violation of the

18   UCL, is actually about Defendants issuing CHLA liens that are not reasonable or

19   necessary, which is similar to the two claims that survived exhaustion in Uhm.  [Id.].

20   Plaintiff's final claim, Elder Abuse, relies on a separate set of duties and remedies,

21   Plaintiff argues.  [Id. at p. 18].

22        Notwithstanding Plaintiff's arguments, this Court does not believe that any of

23   these cases, including Uhm, are directly on point or closely analogous to this case, even

24   if they are instructive as to the meaning of "inextricably intertwined".  See [Dkt. No. 28,

p. 15].  Instead, a case much more analogous to the facts here is <u>Phillips v. Kaiser Found.</u>
<u>Health Plan, Inc.</u>, 953 F. Supp. 2d 1078 (N.D. Cal. 2011).  In <u>Phillips</u>, the plaintiff
received medical treatment paid for by Kaiser via her Medicare Advantage Plan ("MAP")
following a car accident.  953 F. Supp. 2d at 1081.  Plaintiff received a settlement from a
liability insurer in connection with the accident, and Kaiser attempted to recover a
portion of the settlement pursuant to its rights under the Medicare statutes.  <u>Id.</u>
Plaintiff brought claims against Kaiser for violations of the Unfair Competition Law and
the Consumer Legal Remedies Act.[3]  Plaintiff alleged Kaiser violated the law by seeking
reimbursement "in excess of standard Medicare rates[,]" and "in marketing the plan
without telling potential enrollees that Kaiser will seek reimbursement at all or beyond
that which would be sought in a traditional Medicare plan," and that Kaiser acted
fraudulently, unfairly, and unlawfully.  <u>Id.</u> at 1083-84.  The District Court determined,
"[t]o the extent Plaintiff is claiming that Kaiser is running afoul of the Medicare Act by
collecting reimbursement from her in an amount greater than what is permitted under
that Act she is making a claim for benefits and must exhaust that claim."  <u>Id.</u> at 1089.

Also factually similar is <u>Morales v. Providence Health & Servs.</u>, 2015 U.S. Dist.
LEXIS 193129 (C.D. Cal. Dec. 14, 2015), which involved a complaint brought on behalf
of plaintiff and a proposed class of Medicare patients against whose "personal injury
claims, judgments or settlements, one or more of the Defendants have filed a lien and
recovered . . . or billed the Medicare patients directly and recovered . . . any amounts for

---

[3] Although the facts and claims in <u>Phillips</u> are similar, the arguments presented and
ruled on as meritorious are distinguishable, as the ultimate reason for dismissal of these
claims was that the Court agreed with Defendant's argument that Plaintiff's state law
claims were preempted.  953 F. Supp. 2d at 1089-90.  In contrast, here, Defendants do
not argue preemption, but only exhaustion.

items or services for which such individual is entitled to have payments made by Medicare." Id. at *1-2.  Plaintiff underwent physical therapy after a fall and filed a separate tort action against the party she claimed was responsible.  Id. at *3.  Defendant Providence Health System billed and accepted payment from Medicare for plaintiff's sessions, but at some point, Medicare rejected a bill due to clerical error.  Id. at *4.  Medicare informed plaintiff that if a corrected bill was submitted, Medicare would cover the requested charges, but defendants refused to correct and resubmit the requested bill, and instead charged plaintiff for each of the unpaid sessions.  Id.  Defendants sent plaintiff two letters stating a lien had been placed on any settlement proceeds plaintiff received from her separate tort action.  Id.  Defendants argued the case arose under the Medicare Act.  Plaintiff asserted a number of causes of action under California law, but the Court determined each was premised on the "contention that Defendants violated the Medicare Act by billing Plaintiff, rather than Medicare, for the services at issue." 2015 U.S. Dist. LEXIS 193129 at *8.  Accordingly, the Court found that in substance, plaintiff's claims sought the recovery of improperly denied Medicare benefits, are inextricably intertwined with a claim for Medicare benefits, and subject to exhaustion requirements.  Id. at *10-14.

Like in Morales, the four causes of action here are premised on the contention that St. Joseph's Defendants violated state and federal law by charging Plaintiff, rather than Medicare, for the services at issue, in essence arguing St. Joseph's Defendants violated the Medicare Act.  See Morales, 2015 U.S. Dist. LEXIS 193129 at *8.  The bases for the four causes of action are predicated on the underlying contentions that (1) St. Joseph's Defendants violated the law by charging Plaintiff's tort recovery for services for which she was entitled to have Medicare pay; (2) Plaintiff was entitled to have the

charges for the medical services she received at St. Joseph paid by Medicare; and (3) St. Joseph's Defendants therefore violated the Medicare Act by not submitting Plaintiff's bills to Medicare, billing for an amount that is not reasonable in accordance with Medicare provisions, and placing liens on Plaintiff's settlement proceeds with respect to those bills.

Much like in Morales, here, Plaintiff's claims are "cleverly concealed claims for benefits." 2015 U.S. Dist. LEXIS 193129 at *10 (citing Uhm, 620 F.3d at 1141). Morales noted that the complaint in that case "alleges no more than that Defendants were required to comply with the Medicare Act, but failed to do so." Id. at *11. Similarly, here, Plaintiff's allegations that "Defendants assert liens for amounts many times above the amounts they would be entitled to obtain from Medicare," for amounts "that the law never intended a Medicare recipient to pay" and "refus[ing] to apply for reimbursement to Medicare as the secondary payer," with the effect of "depriv[ing] Medicare recipients like Plaintiff of any of the benefits of their health insurance", essentially assert no more than Defendants were required to comply with the Medicare Act and did not do so. [Dkt. No. 19, ¶¶ 10, 12]. In addition, merely because Plaintiff does not seek Medicare benefits as a remedy is not dispositive of whether her claims in essence seek the payment of benefits. "This court consistently has held that claimants cannot circumvent the § 405(h) exhaustion requirement by restyling the remedy sought." Morales, 2015 U.S. Dist. LEXIS 193129 at *11 (citing Uhm, 620 F.3d at 1144). See also Kaiser, 347 F.3d at 1112 ("[t]he type of remedy sought is not strongly probative of whether a claim falls under § 405(h).").

In an effort to separate the claims from the Medicare Act, Plaintiff also argues that her claims are based on the allegation that St. Joseph's Defendants billed for

1    amounts in excess of what is "reasonable and necessary" pursuant to the CHLA.  <u>See</u>

2    [Dkt. No. 28, p. 10].  This argument is not persuasive for a few reasons.  First, the CHLA

3    is not mentioned at any point in the FAC.  It is only in the Opposition that Plaintiff

4    states St. Joseph's Defendants violated the CHLA.  The FAC, however, alleges that the

5    St. Joseph's Defendants' actions contravened the purposes of the Medicare Act.  <u>See,</u>

6    <u>e.g.</u>, [Dkt. No. 19, ¶ 12] ("Defendants not only act contrary to law, but to the

7    fundamental purposes of the Medicare system."); [<u>Id.</u> at ¶ 30] ("Defendants thought

8    that by pursuing this strategy, they could bypass the relatively lower reimbursements

9    they had contracted with Medicare"); [<u>Id.</u> at ¶ 34] ("Defendants' assertion of these liens

10   against Plaintiff turns the entire system on its head").

11          Second, Plaintiff's allegations of unreasonableness are premised on the notion

12   that reasonable amounts are those the Defendants would be entitled to under Medicare

13   reimbursement.  <u>See</u> [Dkt. No. 19, ¶ 10] ("Defendants assert liens for amounts many

14   times above the amounts they would be entitled to obtain from *Medicare*") (emphasis

15   added); [<u>Id.</u> at ¶ 32] ("Defendants have no legal right to claim any sums above and

16   beyond the customary and usual *Medicare* reimbursement rate") (emphasis added).

17   Moreover, an allegation that St. Joseph's Defendants billed Plaintiff for an amount in

18   excess of what was reasonable and necessary does not alter the Court's analysis.  <u>See</u>

19   <u>Phillips</u>, 953 F. Supp. 2d at 1089 ("[t]o the extent Plaintiff is claiming that [Defendants

20   are] running afoul of the Medicare Act by collecting reimbursement from her in an

21   amount greater than what is permitted under that Act she is making a claim for

22   benefits").

23          Third, although Plaintiff asserts the issue is whether St. Joseph's Defendants

24   billed in excess of what is "reasonable and necessary," the gravamen of the FAC makes

15

1    clear that her alleged injury is due to the fact that they sought payment from third party

2    insurance proceeds that Plaintiff would otherwise be entitled to, rather than from

3    Medicare.  See, e.g., [Dkt. No. 19, ¶ 10] ("Defendants refuse to apply for reimbursement

4    to Medicare as the secondary payer"); [Id. at ¶ 30] ("Defendants submitted very few of

5    those services for Medicare reimbursement"); [Id. at 9 n. 1] ("Plaintiff only challenges

6    the liens Defendants issued to Plaintiff, bypassing Medicare altogether").

7         Finally, Plaintiff's injury stems from St. Joseph's Defendants' "refus[al] to apply

8    for reimbursement to Medicare" resulting in the lien placed on Plaintiff's proceeds from

9    the third-party insurance policy.  [Dkt. No. 19, ¶ 10].  This injury is most similar to the

10   injury in Morales:

11            Here, the only injury alleged by Plaintiff is the wrongful denial of Medicare
              benefits due to Defendants' refusal to submit bills to Medicare, and the
12            subsequent limitation on Plaintiff's access to the disputed funds in her settlement
              agreement. Had the bills at issue been submitted to Medicare with the
13            corresponding benefits paid to Defendants, there would have been no basis for
              the claims that are asserted in this action.
14

15   2015 U.S. Dist. LEXIS 193129 at *13.  Almost verbatim, Plaintiff asserts St. Joseph's

16   Defendants "refused to apply for reimbursement for Medicare," in order to "obtain

17   payments they are not otherwise entitled to receive" through "impos[ing] liens on any

18   damages that [Plaintiff] might recover from the third party that injured Plaintiff."  [Dkt.

19   No. 19, ¶¶ 10-11, 31].  Plaintiff's asserted injury shows she is essentially making a claim

20   for Medicare benefits.  Each of Plaintiff's four claims are inextricably intertwined with a

21   Medicare benefits determination and arise under the Medicare Act.

22        Plaintiff's argument that the Elder Abuse claim relies on a separate set of duties

23   and remedies is not sufficient to save that claim.  [Dkt. No. 28, p. 18].  A claimant cannot

24   avoid exhaustion by "restyling the remedy sought."  Morales, 2015 U.S. Dist. LEXIS

193129 at *11.  Merely because an Elder Abuse claim may provide for "not only compensatory damages ... but reasonable attorneys' fees as well," is not significantly probative of whether a claim falls under the provisions of the Medicare Act.  [Dkt. No. 28; p. 18].  See Kaiser, 347 F.3d at 1112.  Second, although the Elder Abuse Act does define financial abuse as wrongfully "obtain[ing]" or "retaining" the benefit of "any property right" of an elder, the FAC makes clear this claim is still a claim inextricably intertwined with a claim for Medicare benefits.  Plaintiff is challenging Defendants' refusal to submit to Medicare and billing Plaintiff instead.  See, e.g., [Dkt. No. 19, ¶ 12] ("The effect of Defendants' manipulation is to deprive Medicare recipients like Plaintiff of any of the benefits of their health insurance"); ("[n]o longer will illness crush and destroy the savings that [older Americans] have so carefully put away") (quoting President Johnson at the 1965 signing ceremony for the first Medicare law).  The FAC shows this action, including the Elder Abuse claim, is based on Defendants' billing Plaintiff rather than Medicare, and is not based on Defendants wrongfully obtaining a property right of an elder.  See [Id. at p. 9 n. 1] ("Plaintiff only challenges the liens Defendants issued to Plaintiff, bypassing Medicare altogether.").  Even if an Elder Abuse claim might involve a separate set of duties and remedies, that is not the case for the claim alleged here.

### b. Exhaustion

As each of Plaintiff's claims are inextricably intertwined with a claim for Medicare benefits, each claim is subject to the requirement that Plaintiff exhaust her administrative remedies under the Medicare Act prior to filing suit.  See 42 U.S.C. § 405(g)-(h); see also Kaiser, 347 F.3d at 1111 ("[j]urisdiction over cases 'arising under' Medicare exists only under 42 U.S.C. § 405(g), which requires an agency decision in

1   advance of judicial review.").  St. Joseph's Defendants assert Plaintiff does not allege

2   that she fully exhausted her remedies through the designated administrative channel.

3   [Dkt. No. 24, p. 24].  Plaintiff does not dispute this, and instead argues no

4   administrative exhaustion was necessary because Plaintiff's claims do not constitute

5   claims for wrongful denial of Medicare benefits.  [Dkt. No. 28, p. 14].  Because Plaintiff

6   has not exhausted her administrative remedies, the FAC must be dismissed for lack of

7   jurisdiction.  Consequently, the Court will not address the remainder of Defendants'

8   arguments and defenses at this time.  The Motion to Dismiss should be granted.

9   **V.**    **<u>LEAVE TO AMEND</u>**

10         If the Court finds that a complaint fails to state a claim, the Court has discretion

11   to dismiss with or without leave to amend.  <u>See</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126–30

12   (9th Cir. 2000) (en banc).  In the Ninth Circuit, courts should grant leave to amend if it

13   appears possible that the defects in the complaint could be corrected.  <u>See</u> <u>id.</u> at 1130-31;

14   However, if, after careful consideration, it is clear that amendment cannot cure a

15   complaint, the Court may dismiss without leave to amend.  <u>Cato v. United States</u>, 70

16   F.3d 1103, 1105-06 (9th Cir. 1995) (affirming district court's dismissal of the complaint

17   with prejudice pursuant to 28 U.S.C. § 1915(d)).

18         The Court does not have jurisdiction to hear Plaintiff's claims as she has not

19   properly exhausted her administrative remedies.  Plaintiff does not refute that she did

20   not exhaust.  Therefore, it is clear Plaintiff cannot supplement her allegations to reflect

21   administrative exhaustion.  As such, Plaintiff cannot cure the deficiencies with this

22   complaint.  The FAC must be dismissed without leave to amend.

23

24

**VI.** **CONCLUSION**

For the foregoing reasons, it is recommended that the District Judge issue an Order (1) accepting this Report and Recommendation; and (2) granting the Motion to Dismiss and dismissing the case without prejudice.


Dated:  March 5, 2021

                                   /s/ Autumn D. Spaeth
                              THE HONORABLE AUTUMN D. SPAETH
                              United States Magistrate Judge

19